MONTGOMERY COUNTY, MARYLAND *v.* FIELDS ROAD CORPORATION ET AL.

[No. 109, September Term, 1977.]

*Decided May 23, 1978.*

---

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Sue Levin, Assistant County Attorney,* with whom was *Richard S. McKernon, County Attorney,* on the brief, for appellant.

*Phillip L. Felts,* with whom were *Ronald .G. Kane* and

*Schuman & Kane, Chartered,* on the brief, for appellee Georgian Woods Limited Partnership et al. No brief filed on behalf of Fields Road Corporation.

ELDRIDGE, J., delivered the opinion of the Court.

This case presents a challenge to Montgomery County regulations requiring landlords with twenty-five or more rental units to report quarterly on minority tenants and applicants. The regulations are challenged on the grounds that: (1) they allegedly create an arbitrary classification in violation of the equal protection of the laws; (2) they represent an improper exercise of the police power, thereby depriving affected landlords of property interests without due process of law; and (3) they are unconstitutionally vague.

On September 24, 1973, the Montgomery County Human Relations Commission, a county government agency charged with enforcing the Montgomery County Fair Housing Law, adopted the reporting regulations pursuant to the authority contained in Montgomery County Code (1972), § 27-14 (b). In accordance with this section, which requires that regulations of the Human Relations Commission be approved by the Montgomery County Council, the County Council subsequently passed Resolution No. 7-1600, approving the reporting regulations. A public hearing on the need for the reporting regulations had been held prior to Commission action, on August 29, 1973.

The regulations require all owners of twenty-five or more rental units to report, quarterly, on forms supplied by the Commission, the following information:

"(A) The name and address of the building, the name and address of the owner, the total number of units in the building (excluding units rented or available for rent only to employees of the owner or of a managing agent), the total number of such units in the group (if any) of which the building is a part, the approximate rental range for a one-bedroom apartment (if the building contains such a unit) and

the number of units occupied on the last day of the three month period (or *March 1, 1974*), for the initial report by (i) one or more Black (Negro) persons and by (ii) one or more Spanish-speaking persons.

"(B) The total number of applicants for rental units in the building during the three month period, and the number of such applicants who were (i) Black persons, and (ii) Spanish-surnamed persons. For purposes hereof, an applicant means a person who personally appears before the owner or a managing agent, whether at the building involved or at an office of the owner or of a managing agent, for the purpose of renting a unit, whether or not such person submits a written application.

"(C) The total number of units in the building (excluding units rented or available for rent only to employees of the owner or of a managing agent) which were rented during the period, and the number of such units which were rented to (i) one or more Black persons and to (ii) one or more Spanish-surnamed persons. For purposes hereof, a unit is rented during the period if during the period it becomes occupied by a new tenant who had not previously resided in the building."

According to a statement on behalf of the Montgomery County Human Relations Commission, the purposes in adopting the regulations were to identify for the Commission probable areas for investigation, to make owners and managers of rental units aware of the composition of their buildings, and to provide a basis for statistical analysis of the problem of discrimination in housing. The Montgomery County Council, in approving the reporting regulations, referred to them as being "in the interest of ascertaining discrimination based on race or ancestry."

The first reports were due to be filed with the Commission on March 31, 1974. Following unsuccessful attempts at securing compliance by several landlords, Montgomery County filed in the Circuit Court for Montgomery County a

bill of complaint seeking an injunction against those landlords. A demurrer, on the ground that the regulations were unconstitutional, was sustained by the circuit court without leave to amend. The circuit court first held that the distinction between owners of twenty-five or more units and owners of a lesser number of units was arbitrary and violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The court also held that the regulations violated the Due Process Clause of the Fourteenth Amendment and Article 23 of the Maryland Declaration of Rights. Finally, the circuit court held that the provisions referring to "Spanish-speaking" and "Spanish-surnamed" persons were unconstitutionally vague. Montgomery County took an appeal to the Court of Special Appeals, and before any proceedings in that court we issued a writ of certiorari.

## (1)

### Equal Protection

The standard of review where a classification like the one here involved is attacked on equal protection grounds is the so-called "rational basis" test, that is whether "the classification challenged be rationally related to a legitimate state interest." *City of New Orleans v. Dukes,* 427 U. S. 297, 303, 96 S. Ct. 2513, 2517, 49 L.Ed.2d 511 (1976). The basic rules which guide a court in applying this test were set down over sixty-five years ago by Mr. Justice Van Devanter for the Supreme Court in *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 61, 78-79, 31 S. Ct. 337, 340, 55 L. Ed. 369 (1911):

"The rules by which this [equal protection] contention must be tested, as is shown by repeated decisions of this court, are these: 1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify ... but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification

having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest on any reasonable basis, but is essentially arbitrary."

*See,* in addition, *Dandridge v. Williams,* 397 U. S. 471, 485-486, 90 S. Ct. 1153, 1161-1162, 25 L.Ed.2d 491 (1970); *McGowan v. State of Maryland,* 366 U. S. 420, 425-428, 81 S. Ct. 1101, 1104-1106, 6 L.Ed.2d 393 (1961); *Wheeler v. State,* 281 Md. 593, 601-604, 380 A. 2d 1052 (1977); *O. C. Taxpayers v. Ocean City,* 280 Md. 585, 594-595, 375 A. 2d 541 (1977); *Davidson v. Miller,* 276 Md. 54, 68-79, 344 A. 2d 422 (1975); *Bowie Inn v. City of Bowie,* 274 Md. 230, 241, 335 A. 2d 679 (1975); *Matter of Trader,* 272 Md. 364, 386, 325 A. 2d 398 (1974).

The evidence in the instant case demonstrated that there was a "reasonable basis" for distinguishing between owners of twenty-five or more rental units and owners of a lesser number of rental units. The chairman of the Housing Committee of the Montgomery County Human Relations Commission testified at the public hearing held by the Commission that over ninety percent of the filed complaints concerning housing discrimination related to apartments and not houses, and that the regulation was therefore aimed at apartment rentals. The chairman went on to testify that "regulations covering the owners of 25 or more units would in fact cover a very high percentage of the units in the county." An additional reason for drawing the line at the ownership of twenty-five or more units, according to the chairman, was that the agency did not want to place a burden on the small property owner.

Apart from the specific testimony in this case, it has long been held that "[c]lassification based on numbers is not

necessarily unreasonable." *People of State of New York v. Zimmerman,* 278 U. S. 63, 77, 49 S. Ct. 61, 66 73 L. Ed. 184 (1928). A legislative body "may weigh relative needs and restrict the application of a legislative policy to less than the entire field." *Mabee v. White Plains Pub. Co.,* 327 U. S. 178, 184, 66 S. Ct. 511, 514, 90 L. Ed. 607 (1946). The Supreme Court of Ohio, in upholding on equal protection grounds a local fair housing ordinance which exempted from its coverage owners of less than five dwelling units, stated that "a legislative body, when it chooses to act to correct a given evil, need not correct all the evil at once, but may proceed step by step," and that "a legislative body is not unreasonable because it elects to proceed slowly in such an emotionally involved field as race relations." *Porter v. City of Oberlin,* 1 Ohio St.2d 143, 205 N.E.2d 363, 369 (1965). The Ohio court also pointed out that owners of larger numbers of dwelling units may be a greater threat to those who would be harmed by housing discrimination, 205 N.E.2d at 369-370.

We conclude that the defendant landlords failed to prove the absence of any rational basis for Montgomery County's exempting owners of less than twenty-five rental units from the reporting requirements. The circuit court therefore erred in deciding that the regulations denied to the defendants the equal protection of the laws.[1]

### (2)

### *Due Process*

After holding that the reporting regulations violated the Equal Protection Clause of the Fourteenth Amendment, the circuit court went on to hold that the regulations were invalid

---

1. In the trial court, in addition to attacking on equal protection grounds the distinction between owners of twenty-five or more units and owners of a lesser number, the landlords made two other equal protection arguments. They argued that the Equal Protection Clause was violated by (1) the failure to include real estate brokers, developers and mortgage lenders in the reporting requirements, and (2) the exclusion from the reporting requirements of minorities other than Blacks and Spanish-speaking or Spanish-surnamed persons. The trial court held that both of these contentions lacked merit. The trial court also held that the landlords had no standing to complain about the exclusion of other minorities. The landlords have not in this Court challenged these rulings by the trial court. Consequently, we need not, and do not, consider the issues.

on so-called substantive due process grounds. In reaching this conclusion, the court first noted that Montgomery County had three purposes or goals in adopting the reporting regulations: "[1] identifying possible areas of investigation, [2] providing a basis for statistical analysis of housing discrimination and [3] making owners 'color conscious' as to their tenants." The court below next held that if these goals were constitutionally permissible, the reporting requirements would be valid, as they were not "unduly onerous" and were "rationally related" to such purposes. The circuit court went on to hold that "[c]ertainly the first two goals are proper objectives under the County's police powers." However, the court decided that the third goal, namely making owners of rental units cognizant of the percentage of minorities in their units, was improper. The court expressed the view that the only objective in making landlords aware of the racial composition of tenants was for landlords to take race into consideration, "presumably by renting to minorities in preference to others." The court stated that such an objective could only be justified where there has been a specifically supported finding of past discrimination, in order to correct that past discrimination. And the court was not "willing to accept the Commission's bald assertion that discrimination in apartment rentals is an overwhelming problem." After deciding that one of the three goals of the reporting regulations was improper, the circuit court stated that this improper purpose was "inexorably intertwined" with the other two purposes. The court concluded that the regulations in their entirety violated the Due Process Clause of the Fourteenth Amendment and Art. 23 of the Maryland Declaration of Rights.

In this Court, the landlords advance essentially the same argument as that adopted by the circuit court. Additionally, they contend that the necessity for the reporting regulations, if any, is outweighed by the burden which the requirements impose upon the landlords. In our view, however, the position taken by the circuit court and the landlords is at variance with the very limited role of a court in reviewing legislative enactments on substantive due process grounds.

Just last month, in *Edgewood Nursing Home v. Maxwell,*

282 Md. 422, 426-427, 384 A. 2d 748 (1978), this Court, in an opinion by Chief Judge Murphy, reviewed the narrow role of a court when legislation is challenged on substantive due process grounds:

"A large discretion is necessarily vested in the legislature to determine what the welfare of the public requires and what measures are necessary to promote it. . . . The wisdom or expediency of a law adopted in the exercise of the State's police power is not subject to judicial review and such a statute will not be held void if there are any considerations relating to the public welfare by which it can be supported. . . . In other words, to be able to find fault with a law is not to demonstrate its invalidity; it may seem unjust, yet be free from judicial interference. . . .

"In the exercise of the police power the State may lawfully impose such burdens and restraints on private rights as may be reasonably necessary and proper to secure the general welfare. . . . The due process clause does not, therefore, inhibit a State from insisting that all contract and property rights are held subject to the constitutional exercise of the police power. . . .

"A statute enacted under the police power carries with it a strong presumption of constitutionality and the party attacking it has the burden of affirmatively and clearly establishing its invalidity; a reasonable doubt as to its constitutionality is sufficient to sustain it. . . . In other words, the legislature is presumed to have acted within constitutional limits so that if any state of facts reasonably can be conceived that would sustain the constitutionality of the statute, the existence of that state of facts as a basis for the passage of the law must be assumed."

*Accord, Governor v. Exxon Corp.*, 279 Md. 410, 423-426, 370 A. 2d 1102 (1977), probable jurisdiction noted, 434 U. S. 814,

98 S. Ct. 50, 54 L.Ed.2d 69-70 (1977); *Westchester West No. 2 v. Mont. Co.,* 276 Md. 448, 348 A. 2d 856 (1975); *Steuart Petroleum Co. v. Board,* 276 Md. 435, 347 A. 2d 854 (1975); *Bowie Inn v. City of Bowie,* 274 Md. 230, 335 A. 2d 679 (1975); *Md. St. Bd. of Barber Ex. v. Kuhn,* 270 Md. 496, 312 A. 2d 216 (1973); *Salisbury Beauty Schools v. St. Bd.,* 268 Md. 32, 300 A. 2d 367 (1973); *Potomac Sand & Gravel v. Governor,* 266 Md. 358, 293 A. 2d 241, *cert. denied,* 409 U. S. 1040, 93 S. Ct. 525, 34 L.Ed.2d 490 (1972); *Brooks v. State Board,* 233 Md. 98, 195 A. 2d 728 (1963); *Allied American Co. v. Comm'r,* 219 Md. 607, 150 A. 2d 421 (1959). And *see North Dakota Pharmacy Bd. v. Snyder's Stores,* 414 U. S. 156, 94 S. Ct. 407, 38 L.Ed.2d 379 (1973); *Ferguson v. Skrupa,* 372 U. S. 726, 83 S. Ct. 1028, 10 L.Ed.2d 93, 95 A.L.R.2d 1347 (1963); *Williamson v. Lee Optical Co.,* 348 U. S. 483, 75 S. Ct. 461, 99 L. Ed. 563 (1955).

The landlords in the instant case are, in effect, asking the judicial branch of government to substitute its judgment regarding the wisdom of the reporting regulations for that of the Montgomery County Human Relations Commission and the Montgomery County Council. Their contention that the need for the regulations is outweighed by the burden on the landlords should be addressed to the legislative and administrative bodies. As the court below found, the landlords have not demonstrated that compliance with the reporting requirements will be unduly onerous. Thus, weighing the degree of burden on the landlords against the need for the regulations is a legislative and administrative matter, not a judicial one.

Turning to the basis for the circuit court's decision, when the court held that two of the purposes underlying the regulations represented valid exercises of the police power, and that the regulations were rationally related to such purposes, this should have been the end of the inquiry. Merely because the court believed a third purpose to be improper furnishes no valid ground for striking down the regulations. As this Court has reiterated many times, a legislative enactment "will not be held void [on substantive due process grounds] if there are *any* considerations relating to the public

welfare by which it can be supported." (Emphasis supplied.) *Edgewood Nursing Home v. Maxwell, supra,* 282 Md. at 426; *Governor v. Exxon Corp., supra,* 279 Md. at 424; *Westchester West No. 2 v. Mont. Co., supra,* 276 Md. at 455, and cases there cited.

Moreover, even if the only goal of the reporting requirements had been to make landlords conscious of the racial composition of their rental units, this would not have furnished a sufficient basis for invalidating the regulations on due process grounds. The circuit court's supposition, that the objective or effect of such a goal would be to cause landlords to rent to minorities in preference to others, is not supported by the record in this case. Instead, the record reveals that Montgomery County hoped that, by raising the racial awareness of landlords, there would be less discrimination. The County argues that if the landlords are more cognizant of the racial makeup of their units, they may more closely examine their practices and eliminate unconscious or unknowing discrimination. We cannot say that the Human Relations Commission and the County Council could not have reasonably made such a judgment.

Although classification along racial lines may not be constitutionally tolerated where the effect is to impose a burden upon a particular race or to segregate on a racial basis, this is to be distinguished from the collection of data identifying the racial composition of a certain group in an effort to prevent discrimination. "Color-consciousness" has been deemed appropriate to prevent discrimination, and "[t]he absence of a judicial finding of past discrimination is also legally irrelevant," *Contractors Ass'n of Eastern Pa. v. Secretary of Labor,* 442 F. 2d 159, 173, 175, 177 (3d Cir. 1971), *cert. denied,* 404 U. S. 854, 92 S. Ct. 98, 30 L.Ed.2d 95 (1971). And *see Norwalk Core v. Norwalk Redevelopment Agency,* 395 F. 2d 920, 931-932 (2d Cir. 1968); *Offermann v. Nitkowski,* 378 F. 2d 22, 23-25 (2d Cir. 1967). As the Supreme Court of New Jersey stated in upholding landlord reporting requirements virtually identical to those involved in the instant case, *New Jersey Builders,*

*Owners & Man. Ass'n v. Blair,* 60 N. J. 330, 288 A. 2d 855, 858 (1972):

" . . . [I]t was the hope and the expectation that the statistical data derived from the reports of property owners would serve to identify particular instances of housing discrimination and that where pronounced patterns of racial imbalance emerged these might offer appropriate targets for investigation and such action as might then be indicated.

"So viewed, there is certainly nothing unreasonable about the Rule we are considering or the requirements it lays down. Assembling and evaluating these pertinent data may obviously be a rational approach toward fulfilling the responsibility with which the agency has been charged. . . .

"It is now generally accepted that despite earlier statements describing the Constitution as being color blind, . . . those who seek to end racial discrimination must often be acutely color conscious. And such a posture has gained wide acceptance."

In sum, we cannot conclude that the reporting regulations are so arbitrary or unreasonable so as to deprive the defendant landlords of property rights without due process of law.[2]

---

2. As previously mentioned, the circuit court held that the regulations violated both the Due Process Clause of the Fourteenth Amendment and Art. 23 of the Maryland Declaration of Rights. Article 23 of the Maryland Declaration of Rights provides that "[n]o man ought to be . . . deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." As we pointed out in Westchester West No. 2 v. Mont. Co., 276 Md. 448, 465 n. 11, 348 A. 2d 856, 866 (1975),

"This Court has long equated Art. 23 with the Due Process Clause of the Fourteenth Amendment. *E.g.,* Bowie Inn v. City of Bowie, *supra,* 274 Md. at 235 n. 1; In re Easton, 214 Md. 176, 187, 133 A.2d 441 (1957); Solvuca v. Ryan & Reilly Co., 131 Md. 265, 270, 101 A. 710 (1917); Pub. S. Com. v. N. C. Rwy. Co., 122 Md. 355, 386, 90 A. 105 (1914); Baltimore Belt R.R. v. Baltzell, 75 Md. 94, 99, 23 A. 74 (1891)."

Our holding in the present case, that the regulations are not invalid on substantive due process grounds, rests upon both the Fourteenth Amendment and Art. 23.

## (3)

### Vagueness

The landlords contend, and the circuit court held, that the terms "Spanish-surnamed" and "Spanish-speaking" in the regulations are so vague as to violate due process requirements. Their reliance is upon the principle set forth in the leading case of *United States v. Harriss,* 347 U. S. 612, 617, 74 S. Ct. 808, 812, 98 L. Ed. 989 (1954):

> "The constitutional requirement of definiteness is violated by a *criminal* statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." (Emphasis supplied.)

However, what we said in *Md.-Nat'l Cap. P. & P. v. Rockville,* 272 Md. 550, 559, 325 A. 2d 748 (1974), is dispositive of the landlords' argument here: "The short answer to appellees' contention is that, except in rare instances, this principle is applicable only in criminal cases." There are no criminal sanctions for violation of the regulations involved in this case. In addition, we believe that the phrases "Spanish-surnamed" and "Spanish-speaking" impart a sufficiently clear meaning to persons of ordinary intelligence. *Cf. Bowie Inn v. City of Bowie, supra,* 274 Md. at 238-240.

> *Judgment of the Circuit Court for Montgomery County reversed, and case remanded for further proceedings consistent with this opinion.*
> *Appellees to pay costs.*