922 A.2d 495

**PRINCE GEORGE'S COUNTY, Maryland**

v.

**RAY'S USED CARS, et al.**

**No. 133, Sept. Term, 2005.**

Court of Appeals of Maryland.

May 4, 2007.

Steven M. Gilbert, Principal Counsel (David S. Whitacre, County Atty., Upper Marlboro, on brief), for petitioner.

Dennis Whitley, III (Russell W. Shipley, Shipley & Horne, P.A., Largo, on brief), for respondents.

Argued before RAKER,*WILNER, CATHELL, HARRELL, BATTAGLIA, GREENE, JOHN C. ELDRIDGE, (Retired, Specially Assigned), JJ.

---

* Wilner, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled

ELDRIDGE, J.

This case concerns a challenge to the constitutionality of a zoning ordinance establishing a minimum lot size of 25,000 square feet for used motor "[v]ehicle, mobile home, or camping trailer sales lot[s]."[1] The dispositive issue in the case, however, is whether the ordinance's challengers were first required to invoke and exhaust administrative remedies. The petitioner, Prince George's County, argues that a judicial determination of the constitutionality of the zoning ordinance is premature because the respondent used car dealers failed to invoke and exhaust their administrative remedies. The respondents claim that pursuit and exhaustion of administrative remedies were not required in this case and that the zoning ordinance is unconstitutional on the ground that it violates due process and equal protection principles. We shall hold that the respondent used car dealers were required to invoke and exhaust administrative remedies prior to obtaining judicial review.

## I.

The Maryland General Assembly, by the Regional District Act, Maryland Code (1957, 2003 Repl.Vol.), Article 28, §§ 7–101 *et seq.*, delegated zoning power for most of Prince George's County to the Prince George's County District Council.[2] Pursuant to § 8–101(2) of the Act, the District Council

---

pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Hereafter, we shall sometimes refer to the "sales lots" as "used vehicle lots" or "used car lots" or "dealerships."

2. The Regional District Act, Article 28, § 7–103, provides in pertinent part as follows:

"(a) *Montgomery County.*—The entire area of Montgomery County is within the regional district, subject to the provisions of § 7–105 of this title.

"(b) *Prince George's County.*—The entire area of Prince George's County is within the regional district, with the exception of the City of Laurel, as its corporate boundaries are defined as of July 1, 1994. * * *"

"may by ordinance adopt and amend the text of the zoning ordinance and may by resolution or ordinance adopt and amend the map or maps accompanying the zoning ordinance text to regulate, in the portion of the regional district lying within its county ... (ii) the size of lots, yards, courts and other open spaces...." The Regional District Act also creates the Prince George's County Board of Zoning Appeals (§ 8–107), provides for the Board of Zoning Appeals to extend or continue "nonconforming uses" (§§ 8–108 and 8–109), and authorizes the Board of Zoning Appeals to grant "special exceptions and variances to the provisions of the zoning regulations." (§§ 8–110 and 8–111). Section 27–229 of the Prince George's County Code, enacted by the District Council, also authorizes the Prince George's County Board of Zoning Appeals to grant variances. Under the Regional District Act, decisions of the Prince George's County Board of Zoning Appeals are final administrative decisions, are subject to judicial review in the Circuit Court, and the Circuit Court's decision is subject to an appeal to the Court of Special Appeals (§ 8–111.1 of the Regional District Act).

On November 14, 2000, the District Council amended the Prince George's County Zoning Ordinance and approved Council Bill 87–2000 ("CB 87"). The new zoning bill imposed a minimum lot size requirement of 25,000 square feet on used vehicle, mobile home, and camping trailer dealerships. CB 87 also contained a three-year amortization period, requiring all such dealerships to comply by August 31, 2003.

On August 29, 2003, Ray's Used Cars, along with seventeen other used car dealers throughout Prince George's County, brought this action in the Circuit Court for Prince George's County, challenging the constitutionality of CB 87 and seeking declaratory and injunctive relief. All of the plaintiff used car dealers operated used car lots that did not meet the new minimum lot size requirement of 25,000 square feet. The plaintiffs contended that CB 87 violated due process and equal protection principles. They did not, however, assert that CB 87 effected an unconstitutional taking of property in violation of Article III, § 40, of the Maryland Constitution and Article

24 of the Declaration of Rights, or in violation of the Fifth Amendment to the United States Constitution. Specifically, the plaintiffs alleged in pertinent part as follows:

"22. That the Plaintiffs maintain that they are entitled to the continued operation of their businesses because CB 87 2000 arbitrarily and unreasonably denies equal protection of the law to Plaintiffs, in that new vehicle, mobile home,[3] camping trailer sales and service lots, are allowed in commercial zones on lots less than Twenty Five Thousand square feet (25,000 sf) and used vehicles are not.

"23. That Plaintiffs also contend the prohibition of used care [sic] lots smaller than Twenty Five Thousand square feet (25,000 sf) in commercial zones is an abuse of the [governmental] power because it has no relation to the public health, safety, general welfare and morals in the effected area [sic].

"24. The Plaintiffs assert that the 'amortization period' is also invalid because the overall reasonableness bears not [sic] rationale [sic] relationship to the factual circumstances and public gain is far outweighed by the private loss of the Plaintiffs.

"25. That there exists an actual controversy of justiciable issue between the parties within the jurisdiction of this Court involving the constitutionality and/or validity of CB–87–2000.

"26. That the Plaintiffs' rights are affected by CB–87–2000 in that they are owners and/or operators of used car lots which might be closed if said statute is not declared unconstitutional.

"27. That Defendant's action[s] in approving CB–87–2000 were arbitrary and capricious and unconstitutional. There exist the strong likelihood that the Plaintiffs will succeed on the merits of their claim.

---

**3.** Whether the ordinance exempts new mobile home sales lots is not entirely clear.

"28. That unless the Defendant is restrained by this Court from enforcing CB–87–2000 which is arbitrary and capricious and unconstitutional, Plaintiffs will suffer immediate, substantial and irreparable injury."

The plaintiffs did not institute any administrative proceedings seeking variances or other administrative remedies. The Circuit Court held a three-day nonjury trial at which the plaintiffs' case focused on the negative impact CB 87 would have on their particular businesses. In his opening statement, the attorney for the plaintiffs explained: "Some [of the plaintiffs] have been in business at their locations for more than thirty years. Some own their businesses. All of the businesses obviously are on lots that are less than 25,000 square feet, and some lease their businesses. This ordinance affects them all in different ways, all of them bad." Five of the plaintiffs testified at trial. Typical testimony offered by the plaintiff used car dealers concerned the size of their car sales lots (all under 25,000 square feet), the profitability of their businesses, the hardship of relocating, and the statements that they were compliant with county regulations other than the minimum lot size requirement in CB 87. In his closing argument, the plaintiffs' attorney delineated the issues that he was raising (emphasis added):

"And the first issue is whether or not CB–87–2000 is constitutional, does it violate the provisions of Article 24 of the Maryland Constitution. Following the case law does it bear, number one, a substantial relationship to its intended purpose, and is it constitutional when you weigh the good it was intended to accomplish against the damage it causes the public *and these plaintiffs in particular.*

"The second issue of the case, Your Honor, is whether or not CB 87 is constitutional as to these particular plaintiffs, and the third issue in this case is whether or not CB 87 is constitutional with reference to the amortization schedule which is—was essentially three years ending on August 31st, 2003."

The Circuit Court filed a declaratory judgment concluding that CB 87 violated "substantive due process" and equal protection principles. The court also enjoined its enforcement. Relying upon language in *Levinson v. Montgomery County,* 95 Md.App. 307, 319–321, 620 A.2d 961, 967–968, *cert. denied,* 331 Md. 197, 627 A.2d 539 (1993), and older cases from an era when courts frequently struck down economic and land use regulatory legislation on so-called "substantive due process" grounds (*see, e.g., Goldman v. Crowther,* 147 Md. 282, 307–308,128 A. 50 (1925)), the Circuit Court took the position that "state courts have shown a greater willingness than their federal counterparts to find that, as a matter of due process, a zoning restriction is arbitrary and unreasonable" and that " 'Maryland courts [under Article 24 of the Declaration of Rights] employ a heightened level of scrutiny—something over and above the "minimum rationality" test under the federal constitution.' " [4] Later in the declaratory judgment, the Circuit Court reiterated "that Maryland has adopted a heightened level of scrutiny for the review of a zoning ordinance." Applying this "heightened scrutiny analysis," the Circuit Court declared that CB 87 denied the plaintiffs due process and equal protection of the laws because it did not bear a "substantial relation to the public health, morals, safety, comfort, or welfare." In addition, the court declared that, "as it applies, CB–87 is arbitrary, unduly oppressive, fundamentally unfair, and unreasonable, and its enforcement will work greater hardship upon the public than that which it endures under existing conditions." Addressing the three-year amortization period set forth in CB 87, the court declared that it was not reasonable because the plaintiffs' loss would far outweigh the public gain.

Prince George's County appealed to the Court of Special Appeals, contending that the plaintiffs' failure to invoke and

---

**4.** With regard to the Circuit Court's reliance on the majority opinion in *Goldman v. Crowther,* it is noteworthy that Chief Judge Bond's dissenting opinion in *Goldman v. Crowther* was quoted extensively, with approval, in *Dep't of Natural Resources v. Linchester,* 274 Md. 211, 219–220, 334 A.2d 514, 520–521 (1975).

exhaust their administrative remedies precluded this action for a declaratory judgment and injunction. Prince George's County alternatively argued that the Circuit Court erred in holding CB 87 unconstitutional. The Court of Special Appeals affirmed in an unreported opinion. Regarding the exhaustion argument, the Court of Special Appeals held that the plaintiffs' challenge to CB 87 fell under the "constitutional exception" to the rule requiring the pursuit and exhaustion of administrative remedies "because they asserted a facial challenge to the validity of CB 87. Accordingly, this 'constitutional exception' allowed them to file a complaint for declaratory and injunctive relief in the Circuit Court, without first applying for variances and litigating their cases before the Board of Appeals."

Turning to the constitutionality of CB 87, the Court of Special Appeals held that the ordinance violated so-called "substantive due process" principles. Like the Circuit Court, the Court of Special Appeals relied heavily upon language in *Levinson v. Montgomery County, supra,* 95 Md.App. at 319–321, 620 A.2d at 967–968.[5] Because the intermediate appellate

---

5. In *Levinson,* the Court of Special Appeals actually upheld the constitutionality of the zoning ordinance challenged in that case. Nevertheless, relying upon *Goldman v. Crowther,* 147 Md. 282, 128 A. 50 (1925), and other earlier "substantive due process" cases, the *Levinson* opinion did state that Article 24 of the Maryland Declaration of Rights subjects zoning ordinances to much greater scrutiny than does the Fourteenth Amendment when the ordinances are challenged on "substantive due process" grounds. More recent opinions of this Court, applying due process principles in the context of economic and land use regulatory legislation, cast doubt upon the position taken in *Levinson. See, e.g., Kane v. Board of Appeals,* 390 Md. 145, 168, 169 n. 16, 887 A.2d 1060, 1073–1074, 1074 n. 16 (2005) (Municipal ordinance's "presumption [of validity] remains, even if the exercise of [governmental] power may cause loss to the individual. * * * This Court has recognized for a long time that this clause [Article 24 of the Declaration of Rights] is interpreted in the same manner as the Due Process Clause of the Fourteenth Amendment. *Bowie Inn, Inc. v. Bowie,* 274 Md. 230, 235 n. 1, 335 A.2d 679, 683 n. 1 (1975)"); *Office of People's Counsel v. MPSC,* 355 Md. 1, 25–28, 733 A.2d 996, 1009–1010 (1999); *Hargrove v. Board of Trustees,* 310 Md. 406, 423–425, 427, 529 A.2d 1372, 1380–1381, 1382 (1987), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 753, 98 L.Ed.2d 766 (1988); *Ogrinz v. James,* 309 Md. 381, 394–395, 524 A.2d 77, 84 (1987); *Robert*

court held the ordinance unconstitutional under "substantive due process principles," it decided that it was "not necessary to address the constitutionality of CB 87 under equal protection principles." The Court of Special Appeals similarly did not reach the issue regarding the validity of the amortization period. Although the appellate court did not expressly hold the amortization period unconstitutional, the court noted "that the appellees are correct in their contention that the record does not show any rational basis for the three-year amortization period. Further, Prince George's County Code's seven-year amortization period for an investment of $20,000 indicates that an amortization period of three years for an investment in excess of $100,000 is not rational." [6]

Following the decision of the Court of Special Appeals, Prince George's County filed a petition for a writ of certiorari, which this Court granted. *Prince George's County v. Ray's Used Cars*, 391 Md. 577, 894 A.2d 545 (2006). The plaintiff

---

*T. Foley Co. v. W.S.S.C.*, 283 Md. 140, 147–150, 389 A.2d 350, 355–357 (1978); *Montgomery County v. Fields Road*, 282 Md. 575, 581–586, 386 A.2d 344, 347–350 (1978); *Edgewood Nursing Home v. Maxwell*, 282 Md. 422, 426–427, 384 A.2d 748, 751 (1978); *Governor of Maryland v. Exxon Corp.*, 279 Md. 410, 423–429, 370 A.2d 1102, 1110–1113 (1977), *affirmed*, 437 U.S. 117, 124, 98 S.Ct. 2207, 2213, 57 L.Ed.2d 91 (1978) ("[I]t is, by now, absolutely clear that the Due Process Clause does not empower the judiciary 'to sit as a superlegislature to weigh the wisdom of legislation,' " quoting *Ferguson v. Skrupa*, 372 U.S. 726, 731, 83 S.Ct. 1028, 1032, 10 L.Ed.2d 93, 98 (1963)).

On the other hand, when governmental action is challenged on the ground that it amounts to an unconstitutional "taking" of a property right in violation of Article III, § 40 of the Maryland Constitution and Article 24 of the Declaration of Rights, under certain circumstances the standards may differ somewhat from those applied by cases dealing with similar challenges based on the Federal Constitution. *See, e.g., Allstate v. Kim*, 376 Md. 276, 290, 293, 296, 829 A.2d 611, 619, 620–621, 622 (2003); *Dua v. Comcast Cable*, 370 Md. 604, 619–631, 805 A.2d 1061, 1070–1077 (2002), and cases there reviewed. *See also Serio v. Baltimore County*, 384 Md. 373, 398–400, 863 A.2d 952, 967–968 (2004). As mentioned earlier, the plaintiffs have not argued that CB 87 amounted to an unconstitutional "taking" of their property rights.

**6.** While purporting not to reach the equal protection and amortization issues, the Court of Special Appeals affirmed a declaratory judgment which had reached these issues.

used car dealers did not file a cross-petition for a writ of certiorari.

## II.

Prince George's County argues that the judgments below violated the rule requiring the invocation and exhaustion of administrative remedies whenever such administrative remedies are exclusive or primary. Prince George's County maintains that variance and other administrative procedures are available to the plaintiff used car dealers, that the Legislature intended that these remedies be pursued and exhausted prior to filing an action in court, but that none of the plaintiffs sought such administrative relief. The County contends that this Court has repeatedly enforced the exhaustion rule in zoning cases like the present one, and that the Regional District Act sets out a comprehensive and detailed scheme of administrative procedures for such land use issues. In oral argument before us, Prince George's County represents that the plaintiffs may now institute administrative proceedings for variances or other relief. The County alternatively asserts that the courts below reached the wrong conclusion on the merits because the 25,000 square foot minimum lot size requirement is constitutional.

The respondent used car dealers contend that they were not required to invoke and exhaust administrative remedies. First, they argue that the available administrative "remedies are neither exclusive [n]or primary." In so arguing, they rely on the fact that the applicable statutes do not expressly state that the administrative remedies are exclusive or primary, and they rely on the principle that, where there exists an alternative judicial remedy, "there is no presumption that the administrative remedy was intended to be exclusive." *Zappone v. Liberty Life*, 349 Md. 45, 63, 706 A.2d 1060 (1998). Second, the used car dealers claim that they challenged the constitutionality of CB 87 "as a whole, and not its application to their particular facts," and that, therefore, the case fell within the "constitutional exception" to the rule requiring invocation and exhaustion of administrative remedies. The

dealers, relying heavily upon *Pressman v. State Tax Commission*, 204 Md. 78, 102 A.2d 821 (1954), one of the few cases falling within the "constitutional exception" to the exhaustion rule, argue that there was "a clear necessity for a prior judicial decision" and that the pertinent "factual determinations" were "not within the expertise of the Board of Appeals or the Planning Board." On the merits, the used car dealers argue that the court below correctly held that CB 87 was unconstitutional.[7]

## III.

We shall reject the used car dealers' alternative contentions (1) that the available administrative remedies are neither

---

7. Although the courts below and the respondents occasionally referred to the "United States Constitution" or the "Fourteenth Amendment," it appears that the Circuit Court's declaratory judgment rested entirely on Article 24 of the Maryland Declaration of Rights. As previously discussed, the theory and basis of the declaratory judgment was the Circuit Court's view that Maryland, in Article 24 of the Declaration of Rights, has adopted a greater level of "substantive due process" scrutiny for judicial review of zoning ordinances than the level of scrutiny under the Fourteenth Amendment. Furthermore, neither the courts below nor the plaintiffs ever relied upon or even cited 42 U.S.C. § 1983, which is a normal (although not the exclusive) jurisdictional route for civil actions challenging local enactments on the ground that the enactments violate the plaintiffs' federal constitutional rights. Actions under § 1983 may be brought without exhausting administrative remedies, *Felder v. Casey*, 487 U.S. 131, 146–147, 108 S.Ct. 2302, 2311, 101 L.Ed.2d 123, 143–144 (1988), although the plaintiffs' claim must still be ripe for judicial consideration.

Nevertheless, to the extent, if any, that the courts below and the plaintiffs-respondents may have grounded their position on the Federal Constitution and on 42 U.S.C. § 1983, it seems clear that any federal constitutional issues are not ripe for resolution under the principles discussed in *Maryland Reclamation Associates, Inc. v. Harford County*, 382 Md. 348, 351–352 n. 2, 366–367, 855 A.2d 351, 352–353 n. 2, 361 (2004); *Maryland Reclamation v. Harford County*, 342 Md. 476, 501–506, 677 A.2d 567, 580–582 (1996), and cases there cited. *See*, in particular, *Williamson County Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 192–194, 105 S.Ct. 3108, 3119–3120, 87 L.Ed.2d 126, 142–143 (1985) (A landowner's constitutional challenge to a new zoning ordinance was held not ripe for judicial decision because the landowner had failed to seek variances from the appropriate administrative officials).

exclusive nor primary and (2) that the case falls within the "constitutional exception" to the exhaustion rule. The Circuit Court will be directed to dismiss the complaint for failure to pursue and exhaust administrative remedies. We shall not, therefore, reach the constitutional issues presented. If the plaintiffs decide to institute appropriate administrative proceedings, those issues, as well as any other issues which the plaintiffs desire to present, may be raised in the administrative proceedings.

### A.

■ This Court has often dealt with the relationship between legislatively created administrative remedies and alternative statutory, common law or equitable judicial remedies. Thus, in *Zappone v. Liberty Life, supra,* 349 Md. at 60–61, 706 A.2d at 1067–1068, we summarized as follows:

> "Whenever the Legislature provides an administrative and judicial review remedy for a particular matter or matters, the relationship between that administrative remedy and a possible alternative judicial remedy will ordinarily fall into one of three categories.

> "*First,* the administrative remedy may be exclusive, thus precluding any resort to an alternative remedy. Under this scenario, there simply is no alternative cause of action for matters covered by the statutory administrative remedy.

> "*Second,* the administrative remedy may be primary but not exclusive. In this situation, a claimant must invoke and exhaust the administrative remedy, and seek judicial review of an adverse administrative decision, before a court can properly adjudicate the merits of the alternative judicial remedy.

> \* \* \*

> "Third, the administrative remedy and the alternative judicial remedy may be fully concurrent, with neither remedy being primary, and the plaintiff at his or her option may

pursue the judicial remedy without the necessity of invoking and exhausting the administrative remedy." [8]

In arguing that the administrative remedies under the Regional District Act and the Prince George's County Code are neither exclusive nor primary, but are merely concurrent with the judicial remedies sought in this case, the respondent used car dealers rely on the absence of language in the Regional District Act and the Prince George's County Code expressly stating that the administrative remedies are exclusive or primary. They also invoke the principle that administrative remedies are not ordinarily presumed to be exclusive.

As we have pointed out, however, "[w]hile sometimes the Legislature will set forth its intent as to whether an administrative remedy is to be exclusive, or primary, or simply a fully concurrent option, *most often statutes fail to specify* the category in which an administrative remedy falls." *Zappone*, 349 Md. at 62, 706 A.2d at 1068 (emphasis added). The absence of express statutory language is a consideration in determining whether an administrative remedy is intended to be exclusive, although it is clearly not the only consideration. It is entitled to little weight in determining whether the administrative remedy is primary.

Moreover, while there is no presumption that an administrative remedy is intended to be exclusive when a recognized alternative judicial remedy exists, there is a strong "presumption that the administrative remedy is intended to be primary, and . . . a claimant cannot maintain the alternative judicial action without first invoking and exhausting the administrative remedy." *Zappone*, 349 Md. at 63, 706 A.2d at 1069. *See, e.g., Maryland Reclamation v. Harford County*, 382 Md. 348, 362, 855 A.2d 351, 359 (2004) ("[W]hen adminis-

---

**8.** There are additional categories, although they are rare. In *Fosler v. Panoramic Design, Ltd.*, 376 Md. 118, 127–128 n. 3, 829 A.2d 271, 277 n. 3 (2003), we discussed a statute creating a statutory administrative remedy and an alternative judicial remedy, in which the Legislature specified that, if both are invoked, the alternative judicial remedy shall be primary.

trative remedies exist in zoning cases, they must be exhausted before other actions, including requests for declaratory judgments, mandamus, and injunctive relief, may be brought," citing *Josephson v. City of Annapolis*, 353 Md. 667, 674–678, 728 A.2d 690, 693–695 (1998)); *Fosler v. Panoramic Design, Ltd.*, 376 Md. 118, 128, 829 A.2d 271, 277 (2003) ("[T]he presumption that a statutory administrative remedy is primary is reflected in the Declaratory Judgment Act"); *Brown v. Fire & Police Employees Retirement System*, 375 Md. 661, 669, 826 A.2d 525, 530 (2003) ("This Court adheres firmly to the rule that statutorily prescribed administrative remedies ordinarily must be pursued and exhausted. * * * This principle that statutory administrative remedies normally must be exhausted is a policy embedded in various enactments by the General Assembly and is supported by sound reasoning"); *Dorsey v. Bethel A.M.E. Church*, 375 Md. 59, 76, 825 A.2d 388, 397 (2003) (A "principle of administrative law . . . is the requirement that administrative remedies must be exhausted before bringing an action in court"); *Furnitureland v. Comptroller*, 364 Md. 126, 133, 771 A.2d 1061, 1065 (2001) ("[W]here the Legislature has provided an administrative remedy for a particular matter or matters, there is a presumption that the Legislature intended such remedy to be primary and intended that the administrative remedy must be invoked and exhausted before resort to the courts"), and cases there cited. *See also PSC v. Wilson*, 389 Md. 27, 88–94, 882 A.2d 849, 885–889 (2005) *Converge v. Curran*, 383 Md. 462, 482–486, 860 A.2d 871, 882–885 (2004); *Moose v. F.O.P.*, 369 Md. 476, 493–495, 800 A.2d 790, 796–802 (2002); *Bell Atlantic v. Intercom*, 366 Md. 1, 12, 782 A.2d 791, 797 (2001).

We have stated that the "Regional District Act is the exclusive source of zoning authority" in the Regional District. *Mossburg v. Montgomery County*, 329 Md. 494, 502, 620 A.2d 886, 890 (1993). *See, e.g., County Council of Prince George's County v. Brandywine Enterprises*, 350 Md. 339, 342, 711 A.2d 1346, 1347 (1998) ("The Regional District Act . . . is the exclusive source of zoning authority in those areas of Prince George's County which it covers"); *Montgomery County v.*

*Revere,* 341 Md. 366, 383, 671 A.2d 1, 9–10 (1996); *Council of Chevy Chase View v. Rothman,* 323 Md. 674, 685, 594 A.2d 1131, 1136 (1991); *Northampton v. Prince George's County,* 273 Md. 93, 96, 327 A.2d 774, 776 (1974). In addition, the adjudicatory administrative and judicial review procedures under the Regional District Act and the Prince George's County Code are available to furnish relief to each of the plaintiff used car dealers whose particular sales lots are adversely affected by CB 87, to the extent that such dealers may be entitled to relief on constitutional or non-constitutional grounds. *See, e.g., District Council v. Brandywine, supra,* 350 Md. 339, 711 A.2d 1346; *Hartman v. Prince George's County,* 264 Md. 320, 286 A.2d 88 (1972); *Gingell v. Board of County Commissioners for Prince George's County,* 249 Md. 374, 239 A.2d 903 (1968); *Hertelendy v. Montgomery County Board of Appeals,* 245 Md. 554, 226 A.2d 672 (1967); *Town of Somerset v. Montgomery County Bd. of Appeals,* 245 Md. 52, 225 A.2d 294 (1966); *Hyson v. Montgomery County,* 242 Md. 55, 64–65, 217 A.2d 578, 584 (1966); *Woodlawn Area Citizens Ass'n v. Board of County Com'rs for Prince George's County,* 241 Md. 187, 192–193, 216 A.2d 149, 153 (1966).

Consequently, fully adequate administrative adjudicatory remedies could have been pursued by the plaintiff used car dealers, and, as stipulated by Prince George's County, can still be pursued by the plaintiffs. Whether or not such remedies are exclusive, at the very least they are presumed to be primary.

Although the Regional District Act is the exclusive source of zoning in the geographical area encompassed by the Regional District, we have not expressly held whether the adjudicatory *remedies* under that Act are exclusive or whether they are simply primary. Furthermore, there is no need to resolve that issue in this case. Whether exclusive or primary, this Court's opinions have made it clear that the adjudicatory remedies provided by the Regional District Act, for the resolution of zoning issues like those presented here, must be pursued and exhausted before resort to the courts. Our cases have applied this principle even when zoning ordinances enact-

ed by the District Council have been challenged on the ground that they were invalid or unconstitutional. We have also held that no action maybe maintained under the Declaratory Judgments Act, Maryland Code (1974, 2006 Repl.Vol.), §§ 3–401, *et seq.,* of the Courts and Judicial Proceedings Article, for the resolution of such issues.

In *Hartman v. Prince George's County, supra,* 264 Md. 320, 286 A.2d 88, landowners in Prince George's County sought from the District Council the grant of a special exception and a variance in order to use their land for a filling station and an automobile repair business. A special exception and a variance were granted, but thereafter several opponents filed with the District Council a petition for reconsideration. The petition was not filed within the time period previously specified in the zoning ordinance, but a new enactment arguably extended the time, and the petition was filed within the extended period under the new enactment. The District Council granted the reconsideration petition and scheduled the case for an administrative hearing. The landowners, instead of further contesting the matter at the administrative hearing, filed a bill of complaint in the Circuit Court for Prince George's County for declaratory and injunctive relief. They argued, *inter alia,* that the new enactment extending the reconsideration time was invalid. The Circuit Court, instead of dismissing the case for failure to exhaust administrative remedies, decided the case on the merits. This Court, however, directed the Circuit Court to enter "an order dismissing the bill and remitting the [landowners] to their special statutory remedies." *Hartman v. Prince George's County, supra,* 264 Md. at 326, 286 A.2d at 90. The Court, in an opinion by Chief Judge Hammond, initially held that the case fell within the exclusion in the Declaratory Judgments Act where "a statute provides a special form of remedy for a specific type of case."[9] The Court

9. Section 3–409(b) of the Courts and Judicial Proceedings Article provides as follows:

went on to point out, *Hartman*, 264 Md. at 324, 286 A.2d at 89–90, that the rule requiring exhaustion of statutory administrative remedies

"has been applied to zoning cases. See *Mayor and City Council v. Seabolt*, 210 Md. 199, 123 A.2d 207 (no declaration that a zoning ordinance does not validly control a particular property where property owner could have appealed an adverse ruling of the zoning board under Code, Art. 66B, § 7). In *Poe v. Baltimore City*, 241 Md. 303, 307, 216 A.2d 707, the owner's claim was that the ordinance was unconstitutional in its application to his property. He argued that he was entitled to a declaration to this effect since only a court and not a zoning board could rule on constitutional questions. His argument was rejected by this Court, which remitted him to his zoning administrative remedies."

After reviewing numerous other zoning cases applying the requirement that statutorily prescribed administrative remedies must be pursued and exhausted, the Court in *Hartman* concluded (264 Md. at 324, 286 A.2d at 90):

"In the case before us, the [landowners] can appear at the rehearing and make and preserve for judicial review all the contentions they now make. . . . "

A similar case under the Regional District Act is *Gingell v. County Commissioners For Prince George's County, supra,* 249 Md. 374, 239 A.2d 903, involving a constitutional challenge to a District Council comprehensive zoning ordinance which changed the classification of a portion of the plaintiff's property. Instead of petitioning the zoning authorities for a reclassification of her property or other relief under the Regional District Act, the plaintiff filed an action in the Circuit Court for declaratory and injunctive relief. She claimed that the zoning ordinance constituted an unconstitutional taking of private property and that it "was unreasonable, discriminatory and arbitrary legislative action bearing no substantial relation

---

"*Special form of remedy provided by statute.*—If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle."

to the exercise of the police power." *Gingell,* 249 Md. at 377, 239 A.2d at 905. This Court, affirming the Circuit Court's dismissal of the action for failure to exhaust administrative remedies, stated (249 Md. at 376–377, 239 A.2d at 905):

> "The reasons for requiring the exhaustion of administrative remedies before resorting to the courts are that it is within the expertise of the administrative agency involved to hear and consider the evidence brought before it and make findings as to the propriety of the action requested; courts would be performing the function that the legislature specified be done by the administrative agency; courts might be called on to decide issues that would never arise if the prescribed administrative remedies were followed; and where a statute provides a specific form of remedy in a specific case then this remedy must be followed...."

*See also Bogley v. Barber,* 194 Md. 632, 640–642, 72 A.2d 17, 20–21 (1950) (zoning action under the Regional District Act was challenged by property owners, and this Court affirmed the dismissal of their action for failure to exhaust administrative remedies).

Turning to the case at bar, it is clear that the administrative procedures available to the plaintiffs, under the Regional District Act and the Prince George's County Code, were either exclusive or primary. As stated in the *Gingell* case, 249 Md. at 377, 239 A.2d at 905, "this [administrative] remedy must be followed."

B.

 Under Maryland administrative law, the "constitutional exception" to the requirement that primary administrative remedies must be pursued and exhausted is an extremely narrow one. For several reasons, the present case does not fall within this limited exception.

 As a preliminary matter, it should be emphasized that "Maryland ... administrative agencies are fully competent to resolve issues of constitutionality and the validity of statutes or ordinances in adjudicatory administrative proceedings

which are subject to judicial review." *Montgomery County v. Broadcast Equities, Inc.,* 360 Md. 438, 451 n. 8, 758 A.2d 995, 1002 n. 8 (2000). This includes the constitutionality of an enactment as applied, as well as the constitutionality of an enactment as a whole. *Insurance Commissioner v. Equitable,* 339 Md. 596, 622, 664 A.2d 862, 875 (1995). Furthermore, "[w]e have held that, if a restriction under a zoning ordinance cannot constitutionally or validly be applied, this is a proper ground for the administrative zoning agency to grant an exception or a variance." *Holiday v. Anne Arundel,* 349 Md. 190, 199, 707 A.2d 829, 834 (1998).

Not only are administrative agencies fully competent to decide constitutional issues, but this Court has consistently held that exclusive or primary administrative remedies must be pursued and exhausted, before resort to the courts, in cases presenting constitutional issues. *See, e.g., Maryland Reclamation v. Harford County, supra,* 382 Md. at 366, 855 A.2d at 362 (a zoning case where this Court held that the appellant's "failure to exhaust administrative remedies, before bringing this judicial review action, applies to the federal constitutional issues as well as the state constitutional and nonconstitutional issues"); *Goldstein v. Time–Out Family Amusement,* 301 Md. 583, 591, 483 A.2d 1276, 1281 (1984); *Arnold v. Prince George's County,* 270 Md. 285, 294, 297, 311 A.2d 223, 227–229 (1973); *Hartman v. Prince George's County, supra,* 264 Md. 320, 286 A.2d 88; *Agrarian, Inc. v. Zoning Inspector,* 262 Md. 329, 331–332, 277 A.2d 591, 592–593 (1971); *Gingell v. County Commissioners For Prince George's County, supra,* 249 Md. 374, 239 A.2d 903; *Poe v. Baltimore City,* 241 Md. 303, 216 A.2d 707 (1966); *Mayor & City Council of Baltimore v. Seabolt,* 210 Md. 199, 123 A.2d 207 (1956); *Tanner v. McKeldin,* 202 Md. 569, 577, 97 A.2d 449, 453 (1953); *Hoffman v. Mayor & City Council of Baltimore,* 197 Md. 294, 305–306, 79 A.2d 367, 372 (1951). *See also PSC v. Wilson, supra,* 389 Md. at 88–93, 882 A.2d at 885–889.

Furthermore, when a constitutional issue is raised in an adjudicatory administrative proceeding, and resolution of

that issue is necessary for a proper disposition of the case, the agency's failure to decide the constitutional issue constitutes error. *Montgomery County v. Broadcast Equities, Inc., supra,* 360 Md. at 451 n. 8, 758 A.2d at 1002 n. 8; *Holiday v. Anne Arundel, supra,* 349 Md. at 199, 707 A.2d at 834; *Maryland Reclamation v. Harford County,* 342 Md. 476, 491–492, 677 A.2d 567, 575 (1996).

In *Montgomery County v. Broadcast Equities, Inc., supra,* 360 Md. at 452–461, 758 A.2d at 1003–1008, a case involving alleged employment discrimination, this Court extensively reviewed the "constitutional exception" to the exhaustion rule. Initially, we pointed out that (360 Md. at 455, 758 A.2d at 1004)

> "this Court has emphasized that the so-called 'constitutional exception' to the normal rule that primary administrative and judicial review remedies must be followed is very 'narrow.' Our ... opinions have significantly limited the scope of that exception." (Footnote omitted).

The *Broadcast Equities* opinion then discussed in detail *Goldstein v. Time–Out Family Amusement, supra,* 301 Md. at 590, 483 A.2d at 1280, which had held that, to come within the exception, "the attack must be made to the constitutionality of the statute as a whole," including all of its parts and all of its applications.[10] The *Broadcast Equities* opinion went on to enumerate several other limitations upon the "constitutional

---

**10.** In *Goldstein v. Time–Out Family Amusement,* the plaintiff brought a declaratory judgment action challenging the constitutionality, on their face, of certain exemptions in a tax statute. This Court held (301 Md. at 590, 483 A.2d at 1280):

"In our view the constitutional attack here was not to the statute as a whole.

"Although Time–Out originally claimed to attack the exemption statute in its entirety, it is clear to us that its real protest focused upon the statutory exemptions granted to recreational businesses, and not upon the exemptions for non-profit and charity institutions which are also contained in § 406. At trial, Time–Out conceded it was not attacking the non-profit and charity exemptions. Thus, we believe Time–Out was not attacking the General Assembly's legislative power to enact exemptions to a general taxation scheme. It merely attacked certain exemptions granted to businesses similar to its own."

exception," even when the challenge is to the statute as a whole. The Court explained (360 Md. at 456–457, 758 A.2d at 1005):

"This Court has also held that the ... constitutional exception has no application where there exists no recognized statutory, common law, or equitable alternative to the statutorily prescribed administrative and judicial review remedies. In other words, where the only recognized avenue for relief is the administrative and judicial review proceedings, the claimant may not circumvent those proceedings by a declaratory judgment or equitable action even where the validity of an enactment on its face is the issue.

\* \* \*

"Similarly, where the legislature has expressly provided or intended that the administrative and judicial review remedy be the 'exclusive' remedy, the exception ... is inapplicable, and a declaratory judgment or equitable action challenging the validity of an enactment 'as a whole' will not lie. *Josephson v. Annapolis, supra,* 353 Md. at 674–678, 728 A.2d at 693–696; *Holiday v. Anne Arundel,* 349 Md. 190, 201–204, 707 A.2d 829, 834–836 (1998); *Zappone v. Liberty Life, supra,* 349 Md. at 60–62, 706 A.2d at 1067–1069.

"In addition, the constitutional exception to the exhaustion requirement does not apply when the constitutional challenge to the statute 'as a whole' involves the need for some factual exploration, which may be necessary when statutory classifications are challenged on equal protection grounds or under Article 46 of the Maryland Declaration of Rights. *See Insurance Commissioner v. Equitable, supra,* 339 Md. at 623–624, 664 A.2d at 876, and cases there cited."

Another limitation upon the exception, pointed out by the *Broadcast Equities* opinion, is where the administrative agency might afford the plaintiff relief on nonconstitutional grounds, thus making unnecessary a ruling on the constitutional issue. This Court stated (360 Md. at 461, 758 A.2d at 1007):

"Furthermore, if this action had been dismissed by the Circuit Court, and if the administrative hearing had taken place, the Montgomery County Commission on Human Relations might have found, on the facts, that no unlawful employment discrimination had taken place. If such decision were supported by substantial evidence, there would be no need to reach any of the constitutional issues raised by *Broadcast Equities*. Applying the so-called 'constitutional exception' under circumstances like these is inconsistent with the firmly established principle of Maryland law 'that we will not reach a constitutional issue when a case can properly be disposed of on a non-constitutional ground,' *Ashford v. State*, 358 Md. 552, 561, 750 A.2d 35, 40 (2000), quoting *State v. Lancaster*, 332 Md. 385, 404 n. 13, 631 A.2d 453, 463 n. 13 (1993). *See, e.g., Harryman v. State*, 359 Md. 492, 503 n. 6, 754 A.2d 1018, 1024 n. 6 (2000); *Thrower v. State ex rel. Bureau of Support Enforcement*, 358 Md. 146, 149 n. 2, 747 A.2d 634, 636 n. 2 (2000); *Dorsey v. State*, 356 Md. 324, 342, 739 A.2d 41, 51 (1999) and cases there cited."

Finally, the *Broadcast Equities* opinion, 360 Md. at 461–462, 758 A.2d at 1008, held that the exception should not be applied when the judicial decision on the facial validity of an enactment is not likely to terminate the controversy.

On three alternative grounds, the plaintiffs' challenge to the zoning ordinance does not fall within the "constitutional exception" to the rule requiring the exhaustion of administrative remedies.

*First,* the attack upon CB 87 has not been to the ordinance "as a whole," including all of its parts and applications. Instead, the thrust of the plaintiffs' challenge has been to the ordinance's effect upon existing used car dealers presently operating on lots under 25,000 square feet. Throughout the proceedings in the Circuit Court, the plaintiffs' evidence and arguments centered upon the adverse effect of CB 87 upon existing used automobile dealers operating on lots under 25,000 square feet, and upon the ordinance's distinction between such used automobile dealers and new automobile dealers. The evidence and arguments at no time were aimed at a

25,000 square foot minimum lot size for potential or future used car dealers. Furthermore, there was no evidence or argument with regard to mobile home or camping trailer dealerships on lots smaller than 25,000 square feet. The five testifying plaintiffs specifically focused only on the negative impact of the ordinance on their under–25,000 square foot lots. In his closing argument, the attorney for the used car dealer emphasized that the court should consider the damage to "these plaintiffs in particular." Under the teaching of *Goldstein v. Time–Out Family Amusement, supra,* 301 Md. 583, 483 A.2d 1276, and numerous other decisions by this Court, the constitutional challenge to CB 87 was not to the enactment "as a whole."

*Second,* the plaintiffs' "substantive due process" and equal protection attacks upon the ordinance were factually based, and the Circuit Court's declaratory judgment rested upon the court's findings of fact.[11] This Court in *Insurance Commissioner v. Equitable,* 339 Md. at 623, 664 A.2d at 876, held as follows:

"Finally, where a constitutional challenge to a statute, regardless of its nature, is intertwined with the need to consider evidence and render findings of fact, and where the legislature has created an administrative proceeding for such purpose, this Court has regularly taken the position

---

11. The plaintiff used car dealers emphasized this in their brief (respondents' brief at 23):

"In the instant matter, the trial court based it [sic] decision that CB 87 was unconstitutional on its factual determinations made after having an opportunity to judge the credibility of the witnesses during a three days trial [sic]. In pertinent parts, the trial court made the following findings of fact: 1) that the testimony and evidence produced at trial provides no persuasive justification for the used classification in the Council Bill, 2) that it is clear CB 87's sponsor wanted to rid his Councilmatic District of small used car lots without the proper justification, 3) that there is no basis for why a 25,000 square foot lot size classification is required for used car sales and not other automobile related services and 4) that the 25,000 square foot lot size was an arbitrary number selected by the Petitioner without any nexus to legitimate governmental purpose."

that the matter should be initially resolved in the administrative proceeding."

The administrative agencies under the Regional District Act were created by the General Assembly to hear the evidence and render the appropriate findings of fact. Instead of initially performing this function itself, the Circuit Court should have deferred to those agencies.

*Third,* the pursuit and exhaustion of the appropriate administrative proceedings might well result in the plaintiffs obtaining relief without the necessity of reaching the constitutional issues at the administrative level or upon judicial review. There are nonconstitutional grounds under the Regional District Act and the Prince George's County Code, which, if deemed applicable at the conclusion of the administrative proceedings, could afford relief to the plaintiffs. The constitutional issues might "never arise if the prescribed administrative remedies were followed," *Gingell v. Board of County Com'rs for Prince George's County, supra,* 249 Md. at 377, 239 A.2d at 905.[12]

For all of the above reasons, the plaintiffs were required to pursue and exhaust their administrative remedies.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT WITH INSTRUCTIONS TO DISMISS THE ACTION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.*

---

**12.** As mentioned earlier in this opinion, the plaintiffs heavily rely upon *Pressman v. State Tax Commission,* 204 Md. 78, 102 A.2d 821 (1954), for their argument that they need not exhaust administrative remedies. The Court's discussion of *Pressman* in *Montgomery County v. Broadcast Equities, Inc.,* 360 Md. 438, 459–460, 758 A.2d 995, 1006–1007 (2000), demonstrates that the *Pressman* case furnishes utterly no support for the plaintiffs' argument.